No. 79-95

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

HAROLD R. MAGNUSON and RONALD MAGNUSON,

Relators and Respondents,

vs.

JAMES R. BILLMAYER,

Defendant and Appellant.

Appeal from: District Court of the Twelfth Judicial District,
In and for the County of Blaine.
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellant:

Morrison, Ettien and Barron, Havre, Montana
Robert D. Morrison argued, Havre, Montana

For Respondents:

Altman and Lilletvedt, Havre, Montana
Brian Lilletvedt argued, Havre, Montana

Submitted: May 28, 1980
Decided: SEP 8 - 1980

Filed: SEP 8 - 1980

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant James R. Billmayer, appeals from a judgment entered upon a jury verdict in the Blaine County District Court awarding general damages and punitive damages against him as the result of an assault.

Billmayer has two essential claims: first, that the evidence does not support an award of exemplary damages; and second, that the trial court erred in not submitting his proposed instructions to the jury with relation to the use of justifiable force. We affirm the judgment.

The assaults arose out of a situation in which the plaintiffs were working on the defendant's land to remove an overhead telephone line system. Triangle Telephone Cooperative Association, Inc. (herein referred to as the telephone company), had an easement on defendant's land for telephone lines and poles, desired to remove the lines and poles, and entered into a contract with the Magnusons to do so. Four or five days later, the Magnusons discussed their intention to remove the wires and poles, with the defendant, and he told them not to remove any poles from his property. Six weeks later Harold Magnuson telephoned the defendant and told him he would be removing the poles. The defendant told him not to go on his land and that he (defendant) had an interest in the poles. The parties had a third conversation concerning the poles and again the defendant told Harold Magnuson not to go on his land.

On August 23, 1976, defendant noticed Ronald Magnuson removing wire from poles on the defendant's land and told him to get off his land. Ronald Magnuson reported this conversation to Harold Magnuson, but they decided to go back to the defendant's property the next day to remove the poles.

On August 24, 1976, defendant noticed that Ronald Magnuson and Magnuson's wife had parked their vehicles on his land. Defendant drove over, parked his truck and Harold Magnuson drove over in another truck. Harold Magnuson told defendant that they were going to remove the poles and defendant again told them not to remove the poles and to get off his land. The Magnusons discussed the matter amongst themselves and decided to proceed with the removal of the poles. When Ronald Magnuson started moving his truck, defendant attempted to block his forward progress and twice used his vehicle to ram Magnuson's vehicle. Ronald Magnuson immediately exited from his truck and attempted to take a photograph of defendant's license plate, and defendant tried to run him down. Defendant's actions resulted in the present lawsuit.

The Magnusons sued defendant asking for wrongful detention and conversion of property damages, damages for injuries to Harold Magnuson's truck, damages for harm inflicted upon Ronald Magnuson individually, and exemplary damages to be awarded to Ronald Magnuson individually, and Ronald Magnuson and Harold Magnuson jointly.

The trial court directed a verdict against the defendant on the issue of liability, ruling as a matter of law that defendant's use of force was not justifiable. Pursuant to a special verdict, the jury awarded $400 to Harold Magnuson for damages to his truck, $11,500 to Ronald Magnuson as exemplary damages assessed as a result of the assault, and $1,244 to Ronald and Harold Magnuson jointly for the value of the poles.

There is no doubt that the evidence supports an award of exemplary damages. Ronald Magnuson testified that while he was driving his truck, there was a crash and his truck

-3-

bounced off to the side, and that a few seconds later he felt another crash. Harold Magnuson testified that defendant smashed into Ronald Magnuson's truck twice. He smashed into the truck, backed up, and took another run at the truck. Ronald Magnuson then exited from his truck and while attempting to take a picture of defendant's license plate on the truck, defendant tried to run him down. Magnuson saw defendant's three-ton grain truck approaching him and suddenly Magnuson's wife screamed for Magnuson to get out of the way. Magnuson evaded the attempt to run him down and ran to the other side of his truck for safety. Defendant then left the scene.

In awarding exemplary damages, the jury may take into account whether the acts complained of are "of such nature as to demonstrate a reckless disregard of the rights of others." Butcher v. Petranek (1979), ___ Mont. ____, 593 P.2d 743, 745, 36 St.Rep. 830, 833; Mosback v. Smith Bros. Sheep Co. (1922), 65 Mont. 42, 46-47, 210 P. 910, 912. The record amply supports a determination that the defendant evinced a reckless disregard for the rights of the Magnusons. Under section 27-1-221, MCA, the malice required for exemplary damages to be awarded may be actual or presumed. Where defendant's conduct is unjustifiable, "malice-in-law" is presumed. First Sec. Bank of Bozeman v. Goddard (1979), ___ Mont. ___, 593 P.2d 1040, 1049, 36 St.Rep. 854 at 865; Cherry-Burrell Co. v. Thatcher (9th Cir. 1939), 107 F.2d 65, 69 (applying Montana law).

The defendant contends that the trial court should not have taken the issue of justifiable force away from the jury. He contends that he was merely exercising what he believed to be his right to prevent the Magnusons from entering upon his land and removing poles which he felt he had a valid claim to do. The trial court, on the other

-4-

hand, based on an easement existing between defendant and the telephone company, determined that the Magnusons had a legal right to bid on defendant's land pursuant to the pole removal contract they had with the telephone company. This being the case, defendant had no right to take the law into his own hands by attempting to run the Magnusons down with his truck. The evidence supports this ruling.

Defendant admitted that when he acquired the land, that he had given easements to the telephone company in 1967 and 1975 which provided that all poles and wire located on the land would remain the property of the telephone company and could be removed at its option. He also admitted that in 1976, he learned that the telephone company was dismantling its overhead line system in his locality and further that he noticed the Magnusons entering upon land of his neighbors to remove poles. He also knew that the Magnusons had entered into a removal contract with the telephone company and that they claimed the right pursuant to an easement to come onto his land to remove the poles. Clearly, the Magnusons, under these facts, had the right to claim access to defendant's land under the telephone company's easement in order to carry out their own removal contract with the telephone company. See, City of Missoula v. Mix (1950), 123 Mont. 365, 373, 214 P.2d 212, 216.

Because the jury was properly informed by the trial court that defendant's use of force was not justified, defendant has no grounds to complain that the trial court erred in not instructing the jury with relation to his theory of the use of justifiable force. As a matter of law, he was not entitled to use that theory in an attempt to explain away his actions. It is fundamental that a party is

not prejudiced by the failure of the trial court to give requested instructions where the evidence does not support the giving of such instructions.

The judgment of the District Court is affirmed.

_Daniel J. Shea_
Justice

We Concur:

_Frank I. Haswell_
Chief Justice

_Gen B Daly_

_John Conway Harrison_

_John C. Sheehy_
Justices